IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **JENNIFER BABOOLAL**, | Case No.: |
| Plaintiff, | |
| v. | |
| **RISE FACILITIES MANAGEMENT GROUP, LLC**, a Texas Limited Liability Company; **RISE ASSOCIATION MANAGEMENT GROUP, LLC**, a Texas Limited Liability Company, | |
| Defendants. | JURY DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

### I.  PRELIMINARY STATEMENT

1. Plaintiff JENNIFER BABOOLAL (hereinafter referred to as "Plaintiff" or "BABOOLAL") makes the following allegations against Defendants RISE FACILITIES MANAGEMENT GROUP, LLC and RISE ASSOCIATION MANAGEMENT GROUP, LLC (hereinafter collectively referred to as "Defendants" or "RISE") in support of her claims that Defendants violated the Family Medical Leave Act of 1993, as amended (hereinafter referred to as "FMLA"). 29 U.S.C. § 2601 et seq.  Specifically, Defendants discriminated, retaliated against, and interfered with Plaintiff's right to take a FMLA-protected leave.  Ultimately, after attempting to use FMLA-protected leave, Defendants took adverse employment action against Plaintiff by terminating her employment.

2. As a direct result of Defendants' actions, Plaintiff has suffered damages.  Thus, by way of this lawsuit, Plaintiff seeks to recover her damages caused by Defendants, including (but not limited to) any wages, salary, employment benefits, other compensation denied or lost by

1

reason of the violations, interest on said amounts calculated at the prevailing rate, liquidated damages, equitable relief (including employment, reinstatement, and promotion), reasonable attorneys' fees, reasonable expert witness fees, and other costs relating to this lawsuit

## II. PARTIES

3. Plaintiff is an individual that resides in the city of Seabrook, in Harris County, in the state of Texas. Plaintiff is a former employee of Defendants.

4. Defendants are considered to be employers qualified to do business in Texas. Defendants, who employ more than fifty (50) regular employees within a seventy-five (75) miles of Plaintiff's worksite, are liable as Plaintiff's "employer" under the FMLA to comply with the protected leave provisions of the act, as set forth within the FMLA (29 U.S.C. § 2601 et seq.), including liability and damages for its unlawful conduct stemming from Plaintiff's protected use of the FMLA.

5. Defendant RISE FACILITIES MANAGEMENT GROUP, LLC (hereinafter referred to as "RFMG") is a Texas limited liability company doing business in Texas with its principal office listed as 2500 Wilcrest Drive, Suite 300, Houston, Texas 77042. Defendant RFMG can be served by serving its Registered Agent for Service of Process, Jason Delgado, 2500 Wilcrest Drive, Suite 300, Houston, Texas 77042.

6. Defendant RISE ASSOCIATION MANAGEMENT GROUP, LLC (also known as Rise Associates Management Group, LLC) (hereinafter referred to as "RAMG") is a Texas limited liability company doing business in Texas with its principal office listed as 3200 Wilcrest Drive, Suite 110, Houston, Texas 77042. Defendant RAMG can be served by serving its Registered Agent for Service of Process, Jason Delgado, 3200 Wilcrest Drive, Suite 110, Houston, Texas 77042.

7. Defendants RFMG and RAMG are considered to be Plaintiff's joint employers and are considered to be a single enterprise. Defendants are related entities. Defendants have common management, there is interrelation between operations, there is a centralized control of labor relations, and/or a degree of ownership or financial control. Defendants both exercise some control over the work or working conditions of its employees, including Plaintiff. Therefore, Defendants may be held jointly liable or as one entity.

### III. JURISDICTION

8. This Court has federal question jurisdiction of this action under 28 U.S.C. § 1331, as this case is being brought pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601 et seq..

9. This Court has personal jurisdiction over RFMG because it is qualified to do business in Texas, including being registered with the Texas Secretary of State. Additionally, during all relevant time periods identified in this lawsuit, RFMG has performed and continues to perform business within Texas.

10. This Court has personal jurisdiction over RAMG because it is qualified to do business in Texas, including being registered with the Texas Secretary of State. Additionally, during all relevant time periods identified in this lawsuit, RAMG has performed and continues to perform business within Texas.

### IV. VENUE

11. Venue of this action is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

12. Venue of this action is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1), because Defendants reside in this judicial district.

## V.    FMLA COVERAGE

13. The FMLA provides that the term "employer" means any person engaged in commerce or in any industry or activity affecting commerce who employs fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year (29 U.S.C. § 2611(4)(A)(i)); and, includes: (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and (II) any successor in interest of an employer (29 U.S.C. § 2611(4)(A)(ii)(I)-(II)).

14. The FMLA provides that an employee is eligible to take leave if the employee had been employed by the employer for at least twelve (12) months and if that employee worked at least one thousand two hundred fifty (1,250) hours during the previous twelve-month period. 29 U.S.C. § 2611(2)(A). Plaintiff started her employment with Defendants on or about June 10, 2019 as a full-time employee, wherein she worked at least forty (40) hours per week. As discussed in more detail below, the first date that Plaintiff was set to be off from work for her surgery was September 21, 2020. Consequently, Plaintiff was an eligible employee under the FMLA.

15. If an individual is deemed to be an eligible employee under the FMLA, which Plaintiff was, an employee is entitled to take up to twelve (12) weeks of leave in any twelve-month period because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. 29 U.S.C. § 2612(a)(1)(D). The term "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves either: (a) inpatient care in a hospital, hospice, or residential medical care facility; or (b) continuing treatment by a health care provider. 29 U.S.C. § 2611(11). Here, as will be discussed in further detail below, Plaintiff has had continuing treatment by a health care provider. And, as

a result of Plaintiff's surgery, she had complications, which resulted in Plaintiff having to spend the night in a hospital and continued treatment by a health care provider. Therefore, Plaintiff had a serious health condition that made her unable to perform the functions of her position for a couple of weeks.

16. The FMLA requires that when an employee returns to work from protected leave, the employer must restore the employee to the position of employment held by the employee when the leave commenced, or to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1)(A)-(B). Furthermore, the "taking of leave under section 2612 of this title shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." 29 U.S.C. § 2614(a)(2). However, on October 2, 2020 (which was one workday before Plaintiff was supposed to return to work according to her doctor's note, as Plaintiff was allowed to return to work on October 5, 2020), Defendants informed Plaintiff that she was being terminated. Moreover, although Defendants told Plaintiff that they could offer her a different position, said position was not an equivalent position with equivalent pay or other equivalent terms. Nonetheless, despite Plaintiff asking for the job offer in writing, on October 7, 2020, Defendants informed Plaintiff that she was terminated again and that she would not be offered a different position with Defendants. Thus, as laid out in further detail below, Defendants violated the FMLA, including (but not limited to) not restoring Plaintiff to her same position or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

## VI. FACTUAL SUMMARY

17. On or about June 10, 2019, Plaintiff started working as a full-time employee for Defendants as a General Manager for its location at 3525 Sage Road, Houston, Texas 77056.

18. On September 17, 2020, which was the same date that Plaintiff herself found out about the fact that she needed surgery, Plaintiff advised Defendants that she would not be at work on September 21, 2020 through September 22, 2020 because of an outpatient surgery that she had to have on September 21, 2020. Specifically, Plaintiff provided notice to three (3) of Defendants' board members as well as to her supervisor, Lisa Nehal. Plaintiff told Defendants that she was expected to return to work on September 23, 2020. Plaintiff further told Ms. Nehal that her doctor told her that she would not be able to lift anything or drive for about one (1) week; but that she was going to get back to work as soon as possible.

19. Plaintiff did not find out that she was going to have surgery until September 17, 2020. As such, Plaintiff provided Defendants notice as soon as was practicable under the facts and circumstances. Plaintiff informed Defendants that the surgery was for "womanly issues." Plaintiff provided Defendants with enough information to put Defendants on notice that she was going to be out of the office for surgery. On September 18, 2020, when three (3) of Defendants' board members were in Plaintiff's office, Plaintiff once again told them that she would be out of the office on Monday and Tuesday, but would be working from home the remaining of the week. At that point, Plaintiff was told by Defendants that she could work from home the rest of that week.

20. Unfortunately, during Plaintiff's surgery, complications arose, which led to Plaintiff not being stable enough to leave the hospital. As such, Plaintiff had to spend the night at the hospital while her doctor monitored her condition; and, Plaintiff was not released from the

hospital until September 22, 2020. Thus, on September 21, 2020, Plaintiff informed Defendants (via Ms. Nehal) that she had to spend the night at the hospital and that she was experiencing pain.

21. On the morning of September 22, 2020, Plaintiff informed Defendants (via Ms. Nehal) that she was still at the hospital, but that she hoped that she would be released from the hospital in the afternoon. Plaintiff told Ms. Nehal that she was in a lot of pain. Plaintiff further informed Ms. Nehal that her doctor told her that she would not be able to work for at least one (1) to two (2) weeks. However, Plaintiff told Ms. Nehal that she was going to try to work from home if she could.

22. On September 23, 2020, Plaintiff called Ms. Nehal to explain to her that she had complications from her surgery and that she would be out of the office longer than expected. During that telephone call, Ms. Nehal told Plaintiff because due to the length of time that she would be out of the office, she would have to take FMLA leave. Thus, when Plaintiff asked Ms. Nehal if she needed to fill out FMLA documents, Ms. Nehal told her that she did not have to fill out any FMLA documents. Plaintiff provided Defendants with a note from her doctor regarding not being able to work until October 5, 2020 and that Plaintiff would return to light duty for four (4) to five (5) weeks after her surgery.

23. On September 24, 2020, Plaintiff sent Ms. Nehal a text message asking if she received her letter from her doctor about her surgery. Ms. Nehal confirmed. Thereafter, since Ms. Nehal asked, Plaintiff told Ms. Nehal that she is still in pain and that the surgery was very painful.

24. Interestingly, Defendants (via Ms. Nehal) told Plaintiff that she could not work from home and that Defendants needed a doctor's note from Plaintiff stating that Plaintiff could

7

return to work. Ms. Nehal further told Plaintiff to keep her informed on how Plaintiff was recovering. Additionally, Ms. Nehal told Plaintiff to follow her doctor's note, that Defendants were following her doctor's note, and that Plaintiff would not be returning to work until she has been cleared by her doctor. Ms. Nehal assured Plaintiff that everything would be okay and that she informed Defendants' human resources department know about Plaintiff's absence.

25. On September 29, 2020, Plaintiff informed Defendants (via Ms. Nehal) that she spoke to her doctor, who stated that Plaintiff could work from home for the next week, but that Plaintiff was merely not allowed to drive.

26. On September 30, 2020, Plaintiff sent Defendants an updated doctor's note that stated that Plaintiff was able to temporarily work from home starting on September 30, 2020 through October 7, 2020. Plaintiff's doctor further stated that Plaintiff is restricted from driving until October 7, 2020. Given said revised doctor note, Plaintiff asked Defendants if Defendants were going to approve Plaintiff to work from home.

27. Since many of Defendants' other managers had a similar position as Plaintiff were already also working from home due to Covid-19, Plaintiff did not believe that Defendants would not approve her to work from home, especially given Plaintiff's revised doctor's note. However, on October 1, 2020, despite Plaintiff's doctor note stating that Plaintiff was able to work from home, Defendants denied Plaintiff's request to work from home.

28. On October 2, 2020, Plaintiff spoke to one of Defendants' board members, who advised Plaintiff that Defendants had a board meeting the night before. When Plaintiff asked about the agenda of the meeting, he stated that it was to review a proposal that was submitted by a vendor for the fire/water tank. In response, Plaintiff stated that she was glad that Defendants received the proposal, as she had requested said proposal. Plaintiff was further informed that

Defendants' board members were not happy that Plaintiff was not there to present the proposal for the fire/water tank. As such, Plaintiff apologized and stated that her surgery did not go well, which ended with her being hospitalized.

29. On October 2, 2020, Defendants (via Ms. Nehal and Emma Deatherage) terminated Plaintiff's employment. When Plaintiff asked Defendants why she was terminated, she was told that she should have made a contingency plan for her prolonged absence and that Plaintiff was not present to provide the fire/water tank proposal. When Plaintiff told Defendants that her termination was unfair, Ms. Deatherage told Plaintiff that there is another position available as a Portfolio Manager that she could have when she returned to work. However, being a Portfolio Manager was not the same position, nor was it an equivalent position (with equivalent benefits, pay, and other terms and conditions of employment). Not only was the base salary less, but said position also did not provide bonus pay. Plaintiff informed Defendants that she had to think about the Portfolio Manager position since said position was not the same position, or a similar position. On October 5, 2020, Plaintiff informed Defendants that she needed the new job offer in writing. Defendants stated that Plaintiff would be provided with it.

30. On October 7, 2020, Ms. Nehal sent a text message to Plaintiff asking if she made a decision on the new Portfolio Manager position that Defendants offered to her. In response, Plaintiff told Defendants again that she could not make a decision unless she gets an official offer, especially because it is a different job. Plaintiff also informed Ms. Nehal that she had been locked out of her RISE e-mail accounts and needed an official termination letter from Defendants.

31. Thereafter, on the same day, Defendants called Plaintiff informing her that she was terminated and that she would not be offered any other employment opportunities with

9

Defendants, including the Portfolio Manager position. After Plaintiff was informed that she was terminated again, she asked Defendants for a termination letter. However, Defendants never provided Plaintiff with a termination letter until on or about November 2, 2020.

32. Aside from Defendants' unlawful conduct, Defendants also violated its own policies and procedures contained within its Employee Handbook

## VII. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT –

## DISCRIMINATION/RETALIATION

**(against all Defendants)**

33. Plaintiff realleges and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

34. The FMLA makes it unlawful for an employer to discharge or in any other manner discriminate against an employee who exercises a right to take leave under the FMLA. 29 U.S.C. § 2615(a)(2). Based on the foregoing, it is evident that Defendants discriminated against Plaintiff, including (but not limited to) retaliating against Plaintiff and terminating Plaintiff's employment because she exercised her right to take leave under the FMLA. Defendants would not have retaliated and discriminated against Plaintiff but for her engaging in FMLA-protected activity.

35. Plaintiff invoked her right to use FMLA benefits and engaged in FMLA-protected activity, including attempting to take time off from work for her serious health condition.

36. As set forth above, Plaintiff suffered an adverse employment action, as Plaintiff was terminated. As such, the adverse employment was causally connected to Plaintiff's invocation of her FMLA-protected leave and FMLA rights.

37. Defendants would not have terminated Plaintiff but for her engaging in FMLA-protected activity.

38. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages, and seeks to recover said damages, including (but not limited to) the following: any wages, salary, employment benefits, or other compensation denied or lost by reason of the violations (29 U.S.C. § 2617(a)(1)(A)(i)(I)) as well as the interest on said amounts calculated at the prevailing rate (29 U.S.C. § 2617(a)(1)(A)(ii)). Plaintiff is also entitled to liquidated damages under 29 U.S.C. § 2617(a)(l)(A)(iii), as Defendants did not act in good faith and had no reasonable grounds for believing they were not violating the FMLA. Moreover, under 29 U.S.C. § 26l7(a)(l)(B), Plaintiff is entitled to appropriate equitable relief, including employment, reinstatement, and/or promotion. Finally, Plaintiff is entitled to reasonable attorneys' fees, reasonable expert witness fees, and other costs relating to this lawsuit. 29 U.S.C. § 26l7(a)(l)(A)(3).

## SECOND CAUSE OF ACTION

**VIOLATION OF THE FAMILY MEDICAL LEAVE ACT - INTERFERENCE**

**(against all Defendants)**

39. Plaintiff realleges and incorporates herein by reference the preceding paragraphs as if fully set forth herein.

40. The FMLA makes it unlawful for an employer to interfere with an employee attempting to exercise their rights under the FMLA. 29 U.S.C. § 2615(a)(l) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.").

41. Plaintiff was entitled to time off from work because Plaintiff had a serious health condition that made her unable to perform the functions of her employment position (for a short amount of time).

42. Plaintiff gave Defendants proper notice of the need for time off from work because she needed surgery; and then again, needed additional time off from work to tend to the complications that arose from the surgery. Specifically, Plaintiff provided Defendants notice as soon as practicable under the facts and circumstances. Plaintiff provided Defendants with enough information to put Defendants on notice that FMLA leave was needed because of a serious health condition.

43. As set forth above, Defendants interfered with, restrained, and/or denied Plaintiff's entitlement to take time off from work pursuant to the FMLA. Defendants discouraged Plaintiff from taking, being on, and/or using FMLA-protected leave. Furthermore, Plaintiff was entitled to be restored to her same position of employment, or to an equivalent position upon her return from FMLA leave. However, when Plaintiff sought to return to work following her FMLA leave, Defendants failed and refused to restore Plaintiff to her same position, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment.

44. Defendants illegitimately prevented Plaintiff from obtaining all of the benefits that Plaintiff was entitled to, as set forth within the FMLA.

45. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages, and seeks to recover said damages, including (but not limited to) the following: any wages, salary, employment benefits, or other compensation denied or lost by reason of the violations (29 U.S.C. § 2617(a)(1)(A)(i)(I)) as well as the interest on said amounts calculated at the prevailing rate (29 U.S.C. § 2617(a)(1)(A)(ii)).  Plaintiff is also entitled to liquidated damages under 29 U.S.C. § 2617(a)(l)(A)(iii), as Defendants did not act in good faith and had no reasonable grounds for believing they were not violating the FMLA.  Moreover, under 29 U.S.C. § 26 1 7(a)(l)(B), Plaintiff is entitled to appropriate equitable relief, including employment, reinstatement, and/or promotion.  Finally, Plaintiff is entitled to reasonable attorneys' fees, reasonable expert witness fees, and other costs relating to this lawsuit. 29 U.S.C. § 26l7(a)(l)(A)(3).

## IX.  JURY DEMAND

46. Plaintiff hereby demands a trial by jury.

## X.  PRAYER

47. WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendants, and that the Court award Plaintiff all appropriate, including (but not limited to) the following:

   a) declare Defendants' conduct in violation of Plaintiff's FMLA rights;

   b) enjoin Defendants from engaging in such conduct that violates the FMLA;

   c) award Plaintiff actual damages;

   d) award Plaintiff all wages, salary, employment benefits, and/or other compensation denied or lost to such employee by reason of the violations (including, but not limited to, front pay and back pay);

    e)   award Plaintiff liquidated damages;

    f)   award Plaintiff equitable relief, including (but not limited to) employment, reinstatement, and/or promotion;

    g)   grant Plaintiff pre-judgment interest and post-judgment interest;

    h)   order Defendants to pay Plaintiff's attorneys' fees and costs associated with this lawsuit; and,

    i)   order and grant such other relief as is proper and just.

Respectfully submitted,

*/s/ Gregg M. Rosenberg*
Gregg M. Rosenberg
USDC SD/TX No.: 7325
Texas State Bar ID: 17268750
Davina Bloom
USDC SD/TX No.: 2851454
Texas State Bar ID: 24091586

ROSENBERG | SPROVACH
3518 Travis Street, Suite 200
Houston, Texas 77002
Telephone No.: (713) 960-8300
Facsimile No.: (713) 621-6670
gregg@rosenberglaw.com
davina@rosenberglaw.com

Attorney-In-Charge for Plaintiff

ROSENBERG | SPROVACH
3518 Travis Street, Suite 200
Houston, Texas 77002
Telephone No.: (713) 960-8300
Facsimile No.: (713) 621-6670
Attorney for Plaintiff